RECEIVED
NOV 1 3 2014
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| MELBA TERRY SHELTON SUCCESSION | CIVIL ACTION NO. 6:13CV2126 |
| VERSUS | JUDGE DOHERTY |
| ENCOMPASS INDEMNITY CO., ET AL. | MAGISTRATE JUDGE HILL |

**MEMORANDUM RULING**

Currently pending before the Court are cross-motions for summary judgment, whereby plaintiff seeks judgment in her favor on all claims, and defendant seeks judgment in its favor dismissing all claims. [Doc. Nos. 17, 22] For the following reasons, plaintiff's motion [Doc. 22] is DENIED, and defendant's motion [Doc. 17] is GRANTED.

**I.     Factual and Procedural Background**

This suit was brought by Carita Shelton Boutte, in her capacity as the administratrix of the Succession of Melba Terry Shelton.[1] [Doc. 1-4, p. 1] The following facts are not in dispute:

On October 3, 2002, the home of Mrs. Melba T. Shelton was seriously damaged by Hurricane Lili. Mrs. Shelton's home was insured by Encompass Indemnity Company ("Encompass"). Ms. Lori Barnes was assigned by Encompass to adjust the contents portion of the claim. As Mrs. Shelton was hospitalized at the time of loss, her son, attorney Thomas Robert Shelton ("Mr. Shelton"), began

---

[1] Ms. Boutte was appointed as administratrix on March 7, 2012. [Doc. 1-4, p.2]

the claims process.[2] [Doc. 17-10, pp. 18-19]

On November 15, 2002, Ms. Barnes and Mrs. Shelton's three children inspected some of the damaged contents in three storage facilities.[3] On December 10, 2002, Ms. Barnes spoke with Mr. Shelton by telephone, and they discussed the progress Mr. Shelton had made on the list of damaged contents.[4] Between December 18, 2002 and May 27, 2003, Ms. Barnes placed eight separate telephone calls to Mr. Shelton to inquire about the status of the contents list, but on each occasion was advised either Mr. Shelton was awaiting information regarding the contents or he was unavailable. On July 18, 2003, Ms. Barnes sent a letter to Mr. Shelton, again requesting a contents list and supporting information. On October 2, 2003, Mr. Shelton submitted the contents list to Ms. Barnes, along with correspondence reading, in part, "As the first anniversary is nearing, I must make demand, as the attorney-in-fact for my mother, Melba T. Shelton, for payment of the itemized loss set forth herein totaling $267,230.88."[5]

On November 19, 2003, Ms. Barnes spoke to Mr. Shelton by telephone and acknowledged receipt of the contents inventory. On January 26, 2004, Ms. Barnes faxed a list of items for which further information was needed prior to payment by Encompass. In February and March of 2004, Ms.

---

[2]In 1999, Mrs. Shelton granted a general co-power of attorney to her three children - Carita Shelton (administratix herein), Mignon T. Shelton, and Thomas Robert Shelton. The co-power of attorney was recorded in the public records of Lafayette Parish, Louisiana on October 3, 2000.

[3]By this time, Mrs. Shelton was living in a nursing home.

[4]Following a covered loss, the Encompass policy requires an insured to submit a "signed, sworn proof of loss" within sixty (60) days after request. The proof of loss must set forth (in part) "an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss" and "[a]ttach all bills, receipts and related documents that justify the figures in the inventory." [Doc. 17-5, p. 34]

[5]In his October 2, 2003 letter, Mr. Shelton acknowledged Encompass had previously paid Mrs. Shelton a total of $654,002.09, $50,000.00 of which appears to have been for payment of contents.

Barnes placed three telephone calls to Mr. Shelton seeking the additional information for those items referenced in her January 26, 2004 facsimile. On April 22, 2004, Ms. Barnes sent a letter to Mr. Shelton, again requesting the additional information.

By May of 2004, with no further information ever provided by Mr. Shelton, Ms. Barnes began adjusting the contents loss for those items for which she had adequate information to establish a replacement/repair cost and the Actual Cash Value ("ACV"). Ms. Barnes prepared an estimate, assigning a value for those items for which she had sufficient information, and listing and assigning a zero for those items for which additional information was needed. In her estimate, Ms. Barnes calculated a replacement cost of $230,810.82, applied depreciation of $50,653.88 based on the age and condition of the items, thereby yielding an ACV amount of $180,156.94. Applying the two advance contents payments of $25,000.00 each, Ms. Barnes determined Encompass owed Mrs. Shelton an additional $130,156.94 for contents coverage.

On June 14, 2004, Ms. Barnes sent Mr. Shelton correspondence and attached a copy of the itemized estimate explaining the process by which the figures were derived. She further advised a check would issue separately. The same day, Encompass issued a check to Mrs. Shelton in the amount of $130,156.94, and mailed the check to the office of Mr. Shelton. On October 21, 2004, Encompass sent a letter to Mrs. Shelton at Mr. Shelton's office advising the foregoing check had not been cashed, and would become "stale dated and invalid 180 days from [June 14, 2004]." [Doc. 17-9, p.1] No further contact was made by anyone from, or on behalf of, the Shelton family until May 14, 2012. On that date, counsel for plaintiff herein sent a facsimile to Encompass, advising the June

14, 2004 check had been lost, and asked that the check be reissued.[6] [Doc. 17-11]

On June 26, 2012, Encompass reissued the check for $130,156.94 and sent it to counsel for plaintiff. [Doc. 17-12] In a letter dated July 18, 2012, counsel for plaintiff acknowledged receipt of the foregoing check, and then "request[ed] accrued interest for the eight years from the date of the original check, June 14, 2004." [Id.] Encompass declined the request for interest. Thereafter, this suit was filed.

As set forth in the complaint, by this suit the administratrix of Mrs. Shelton's estate seeks: (1) damages for defendant's "failure to accurately adjust and pay the property claim of Decedent by omitting certain personal property items . . ." [Doc. 12, p. 3]; (2) "interest at the legal rate, compounded annually, on the $130,156.94 from June 14, 2004 through June 26, 2012, or, in the alternative, for damages and/or unjust enrichment due to its negligent delay in paying Decedent's Personal Property Claim in an amount to be determined by the Court in these proceedings" [Doc. 1-4, p. 3]; (3) "damages in an amount equal to the Depreciation [*i.e.* $50,653.88], plus interest thereon at the legal rate, compounded annually, from June 14, 2004 through the date of payment" [Id. at 3-4]; and (4) "penalties attorney fees and costs under LRS 22:1892 and 22:1973 in such amounts to be determined by the Court in these proceedings" [Id. at 3].

---

[6]According to an affidavit executed by Mr. Shelton on January 10, 2014, he was hospitalized on June 14, 2004 (*i.e.*, the date Ms. Barnes sent the estimate and Encompass sent the check for contents damages to Mr. Shelton's office). Mr. Shelton states his "convalescence period was approximately two to two-and-a-half months with limited office practice for the next four-and-a half to five months." [Doc. 17-6, p. 2] According to Mr. Shelton's affidavit, although a copy of the Encompass check is contained in his file (which Mr. Shelton produced to Encompass in response to a subpoena duces tecum), he has no "independent recollection" of the receipt, handling and/or disposition of the check. [Id.; Doc. 17-7, p.1; Doc. 17-8, p. 57] According to Mr. Shelton, his file does not contain a copy of the October 21, 2004 letter advising of the imminent stale date. [Doc. 17-6, p.2]

## II.   Standard of Review

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

*Id.* at § (c)(1).

As summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. *Id.* at 322; *see also, Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

> In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint . . . . Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990) (internal quotation marks and citations omitted).

The Fifth Circuit has further elaborated:

> [The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)(citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "[c]redibility determinations are not part of the summary judgment analysis." *Quorum Health Resources, L.L.C. v. Maverich County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002). To the contrary, in reviewing the evidence, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Peel & Co., Inc. v. The Rug Market*, 238 F.3d 391, 394 (5th Cir. 2001).

III. Analysis

A. Damages for Omission of Certain Personal Property Items

Plaintiff argues it is entitled to an additional $38,631.00, along with interest and penalties, "for Defendant's failure to accurately adjust and pay the property claim of Decedent by omitting certain personal property items destroyed and/or damaged in the home of Decedent. . . ." [Doc. 12, pp. 2-3] The $38,631.00 represents the portion of the amount demanded by Mr. Shelton in his October 2, 2003 demand letter to Encompass, for which Encompass denied coverage due to insufficient information. [Doc. 22-1, p.3; Doc. 17-8, pp. 4-64] Defendant argues this claim must be dismissed, as it has prescribed pursuant to the one year prescriptive period set forth in the policy.

Plaintiff asserts the claim has not prescribed, arguing:

> The Policy states that the time within which suit must be filed "is extended by the number of days between the date the proof of loss is submitted and the date the claim is denied in whole or in part." Since Encompass held Mrs. Shelton's claim open for additional information and consideration and never denied it in whole or in part, neither the contractual nor legal limitation periods for suit ever began and ran.

[Doc. 22-1, p.4][7]

---

[7]The insurance policy provides:

No action can be brought unless the policy provisions have been complied with and the action is started:

a. Within one year after the date of loss; but

b. Not until 30 days after the proof of loss has been filed and the amount of loss has been determined.

However, the one year period is extended by the number of days between the date the proof of loss is submitted and the date the claim is denied in whole or in part.

[Doc. 17-5, p. 35] The Court notes the prescriptive period set forth in the policy complies with Louisiana law in effect at the time of the occurrence. At that time, La. R.S. 22:629 provided, "No insurance contract delivered or issued for delivery in this state . . . shall contain any condition, stipulation, or agreement: . . .

In this matter, Mr. Shelton submitted a proof of loss on behalf of his mother seeking $267,230.88 on October 2, 2003. On June 14, 2004, Encompass denied the claim in part, agreeing to pay only $130,156.94. However, Encompass advised, "Items that have not been addressed in the inventory form will be considered upon receipt of additional requested information." [Doc. 17-10, p. 20] In the ten years following Mr. Shelton's receipt of the foregoing correspondence, the "additional requested information" has never been submitted to Encompass. The policy states Encompass has "no duty to provide coverage under this policy unless there has been full compliance" with certain duties, including: an inventory of damaged personal property with attached "bills, receipts and related documents that justify the figures in the inventory." [Doc. 17-5, p.34] The inventory with attached supporting documents is required to be sent to Encompass "within 60 days after our request." [Id.] At best, assuming *arguendo* the statement relied upon by plaintiff served to interrupt prescription, it would only have interrupted the claim for one year, or until June 14, 2005 - *i.e.*, one year from the date of the last payment made by Encompass. *Lila, Inc. v. Underwriters at Lloyd's, London*, 994 So.2d 139, 146 (La.App. 4 Cir. 2008)(Noting were the court to find the insurer's "two payments of undisputed amounts constituted an acknowledgment sufficient to interrupt prescription, it would only have interrupted the claim for one year . . . one year from the date of the last payment made by Lloyd's . . . ."); *McQuillen v. Shelter Ins. Companies*, 835 So.2d 872, 873-74, 876 (La. App. 2 Cir. 2002)(correspondence from insurer including partial payment for amount of loss and asking insured's attorney to contact insurer to discuss any matters related to the claim did not constitute a waiver of prescription); *Wolfe World, LLC v. Stumpf*, 43 So.3d 311, 315

---

[l]imiting right of action against the insurer to a period of less than twelve months next after the inception of the loss . . . ." La. R.S. 22:629 (West 2002).

(La. App. 4 Cir. 2010)(unconditional tender by an insurer to its insured does not interrupt prescription on a first-party claim); *Webb v. Blue Cross Blue Shield of Louisiana*, 711 So.2d 788, 789, 792 (La. App. 1 Cir. 1998)(insurer's act of advising insured it was reconsidering previous denial of claim did not suspend prescriptive period of policy).[8]

In light of the foregoing, the Court concludes any claim for damages sustained in Hurricane Lili arising under the insurance policy issued by Encompass to Mrs. Shelton prescribed, at the latest, on June 14, 2005. Accordingly, plaintiff's claim for damages for Encompass' omission of $38,631.00 in contents losses is denied.

### B. Claim for Legal Interest

By this claim, plaintiff asserts the estate is entitled to "interest at the legal rate, compounded annually," on the contents payment of $130,156.94, from June 14, 2004 (the date a check for that amount was originally issued) through June 26, 2012 (the date the replacement check was issued). [Doc. 1-4, p.3] Alternatively, plaintiff seeks "damages and/or unjust enrichment" due to defendant's "negligent delay in paying Decedent's Personal Property Claim." [Id.]

---

[8] The Court additionally notes the Louisiana Insurance Code provides:

> None of the following acts by or on behalf of an insurer shall be deemed to constitute a waiver of any provision of a policy or of any defense of the insurer thereunder:
>
> (1) Acknowledgment of the receipt of notice of loss or claim under the policy.
>
> (2) Furnishing forms for reporting a loss or claim, for giving information relative thereto, or for making proof of loss, or receiving or acknowledging receipt of any such forms or proofs completed or incompleted.
>
> (3) Investigating any loss or claim under any policy or engaging in negotiations looking toward a possible settlement of any such loss or claim.

La. R.S. 22:651 (West 2002).

Defendant argues its delivery of payment in June 2004 to Mrs. Shelton's son extinguished its obligation to pay the sums specified by the policy, citing La. Civ. Code art. 1854.[9] Defendant further argues La. Civ. Code art. 3498 provides for a liberative prescription period of five years, and therefore, the "obligation to pay via the check was extinguished by five years liberative prescription."[10] According to defendant, in light of the foregoing, "no underlying legal obligation existed after June 2009 upon which to seek recovery of interest. . . ." [Doc. 17-4, p.6] Contrarily, plaintiff argues its claim is not extinguished, nor has it prescribed, because the language of the policy expressly extends the time for suit where, such as here, "Encompass held . . . [the] claim open for additional information and consideration and never denied it. . . ." [Doc. 22-1, p. 4]

Here, the Court finds Encompass' payment to plaintiff of $130,156.94 constituted partial performance of its obligation to pay contents losses, thereby extinguishing the undisputed portion of the obligation to pay contents damages. When an obligee accepts payment of the undisputed portion of money owed by the obligor, the obligee preserves only the right to claim the disputed portion of the money owed. La. Civ. Code arts. 1854, 1861. As the underlying claim to the undisputed portion of contents loss damages was extinguished by performance, there is no basis for an award of legal interest.[11]

---

[9] La. Civ. Code art. 1854 provides: "Performance by the obligor extinguishes the obligation."

[10] La. Civ. Code art. 3498 provides: "Actions on instruments, whether negotiable or not, and on promissory notes, whether negotiable or not, are subject to a liberative prescription of five years. This prescription commences to run from the day payment is exigible."

[11] The Court further notes, generally, interest in *ex contractu* matters is due from the date of judicial demand, unless the obligor has "actively violated the contract," in which case interest is due from the moment of breach. *Knecht v. Bd. of Trustees for State Colleges*, 591 So.2d 690, 697-98 (La. 1991). Here, Encompass did not actively violate the contract, as it attempted to tender payment to plaintiff of the undisputed portion of the contents loss damages in June of 2004. Plaintiff's son and "attorney in fact" received the check for contents loss damages, but for whatever reason, failed to negotiate the check.

The only other bases plaintiff has identified in support of the demand for an award of interest on the $130,156.94 are "the Unclaimed Property Act or the law confirmed and established by the Louisiana Supreme Court in *In Re Bradford Trust*, 538 So.2d 263 (La. 1989). . . ." [Doc. 1-4, p.3; Doc. 22-1, pp. 4-5] With regard to plaintiff's assertion interest is owed pursuant to Louisiana's "Uniform Unclaimed Property Act of 1997," La. R.S. 9:151, *et seq.*, plaintiff entire argument is as follows:

> Encompass acknowledged by Lori Barnes' October 21, 2004 letter to TRS that it was legally required to report and pay the $130,156.94 to the Unclaimed Property Division of the Louisiana State Treasurer, but it did not do so. Considering that failure, Encompass was not released or relieved of liability under and by the Unclaimed Property Act, but rather, Encompass stood as a fiduciary for the monies it admittedly owed to and held in trust for Mrs. Shelton. But, rather than pay those monies to Mrs. Shelton's succession representative or to one or more of the Children and Mrs. Shelton's agents or to the Louisiana Treasurer under the Unclaimed Property Act or into a concursus proceeding, Encompass instead elected to secret, divert and keep Mrs. Shelton's funds for itself, apparently hoping with the passage of time that no estate, heir or other rightful owner would notice and come to collect. But, when that rightful owner, Petitioner, in fact did notice and come to collect, Encompass knew it was in the wrong and promptly paid the $130,156.94 principle amount.

[Doc. 21, p.4]

Under Louisiana's Unclaimed Property Act, "after a specified passage of time, holders of property abandoned by missing owners must report the possession of the abandoned property and relinquish custody to the state." *Hooks v. Treasurer*, 961 So.2d 425, 430 (La. App. 1 Cir. 2007)(citing La. R.S. 9:153-160); *see also Louisiana Health Service and Indem. Co. v. McNamara*, 561 So.2d 712, 716 (La. 1990). Once the holder transfers the property, "the state assumes custody and responsibility for the safekeeping of the property." La. R.S. 9:162(B). The state then holds the

---

Under these facts, it cannot be argued Encompass "actively violated the contract," thus entitling plaintiff to interest from the date of breach.

property "in perpetual custody for the missing owner." *McNamara* at 716. "Pending a claim by the missing owner, the state receives the use of the property as well as any income that it may provide." *Id.* Thus, the Act protects the property of the missing owner while awaiting possible reclamation, and reflects "a policy that unclaimed property should benefit the general public rather than the holders of the property." *Id.*

First, following a review of the Act and interpreting caselaw, it appears the Act does not provide a right of action by an owner of abandoned property against the holder of that abandoned property for failure to deliver the property to the Administrator of Unclaimed Property. Rather, the Act permits only the Administrator to file an action against the holder for its failure to report, pay or deliver property. La. R.S. 9:176. Second, under the Act, as a general matter, interest to the owner of abandoned property is available only for property bearing interest at the time it was surrendered to the state. La. R.S. 9:163. In this matter, the check for contents damages did not bear interest, and thus, had Encompass delivered the funds to the Administrator of the Act, plaintiff would not be entitled to any interest, had it ever made a claim for the abandoned property. *See e.g. Hooks* at 432 ("In return for this advantageous long-term reclaiming service, the state is afforded the benefit of retaining, after any deductions required by law, the interest earned from post-abandonment actions of the state.") For all of these reasons, the Court finds plaintiff has failed to carry its burden to show it is entitled to interest pursuant to the Unclaimed Property Act.

With regard to plaintiff's argument the Louisiana Supreme Court's decision in *In Re Bradford Trust*, 538 So.2d 263 (La. 1989), entitles it to interest, the Court disagrees. *Bradford Trust* is factually and legally distinguishable from the matter before this Court. In *Bradford Trust*, the Louisiana Supreme Court found a trustee liable for permitting a substantial amount of money to

leave the trust to be used by the settlor for his own purposes. Because the trust instrument did not provide for a specific rate of interest, the court found the trustee was required to pay the beneficiaries the legal rate of interest, compounded annually, on the diverted amounts from the date of diversion, as compensation for the beneficiary's loss of use of the trust proceeds. The court further found compound interest was a proper method for allowing the trust to be compensated for the interest or other profit it would have made on the diverted funds had there been no diversions, relying upon La. R.S. 9:2201, which provides the trustee shall be liable for profits which would have accrued if there had been no breach of trust. *Id.* at 269.

In the matter before this Court, even assuming *Bradford Trust* factually applies to this matter, no funds were diverted from plaintiff. Rather, plaintiff failed to negotiate the check tendered by Encompass. When, eight years later, plaintiff requested the check be reissued, Encompass promptly complied. More importantly however, *Bradford Trust* did not involve a claim for legal interest on an underlying prescribed obligation. Accordingly, the Court finds plaintiff is not entitled to interest pursuant to *In Re Bradford Trust*.

Finally, with regard to plaintiff's alternative claim for unjust enrichment, to the extent that claim has not been abandoned, it is denied.[12] Pursuant to La. Civ.Code art. 2298, the remedy of unjust enrichment is subsidiary in nature, and "shall not be available if the law provides another remedy." La. Civ. Code art. 2298; *Morphy, Makofsky & Masson, Inc. v. Canal Place 2000*, 538 So.2d 569, 572 (La. 1989)(the existence of a claim on an express or implied contract precludes application of unjust enrichment); *Fidelity & Deposit Co. of Maryland v. Smith*, 730 F.2d 1026, 1030

---

[12]Although plaintiff states it is entitled to recovery for unjust enrichment in its complaint, no reference is made to any such claim in the motions before this Court.

(5th Cir.1984)(claim of unjust enrichment unavailable where contract governed the parties relationship). The unjust enrichment remedy is "only applicable to fill a gap in the law where no express remedy is provided." *Id.* (quoting *Mouton v. State*, 525 So.2d 1136, 1142 (La. App. 1st Cir.1988)). As plaintiff's claim in this matter is governed by the contract of insurance and the Louisiana Insurance Code, plaintiff is precluded from pursuing a claim under the theory of unjust enrichment.

C.   **Damages equal to Depreciation**

By this claim, plaintiff "seeks $50,653.88 withheld by Encompass as depreciation, being the aggregate difference between replacement costs and actual cash values." [Doc. 22-1, p.6] Plaintiff's entire argument in support of this claim is as follows:

> The Policy provides for replacement cost coverage, subject to the advance or suspensive condition that the insured must first replace her loss items before being paid the difference between those items' replacement costs and their actual cash values.
>
> But here Mrs. Shelton died on November 11, 2003 while Encompass' Lori Barnes was adjusting Mrs. Shelton's claim and before Mrs. Shelton could replace her loss items. Mrs. Shelton's death made replacement impossible and rendered the condition null.

[Id. at 6-7(citing La. Civ. Code arts. 1767, 1769; footnotes omitted)]

The Court disagrees. First, as noted by defendant, La. Civ. Code art. 1769 actually provides, "A suspensive condition that is unlawful or impossible makes the *obligation* null." *Id.* (emphasis added). In other words, where a suspensive condition is impossible, it is the "obligation," and not the condition, that is null. However, the Court finds the referenced codal article is inapplicable to the matter at hand. Here, the obligation of Encompass to pay contents losses is a conditional obligation, which may not be enforced until a suspensive condition occurs, namely, the destruction

of contents caused by a covered loss. La. Civ. Code art. 1767. The insurance provision at issue provides: "If the replacement cost for the entire loss under this '**HOME**' Segment is more than $3,000 we will pay no more than the actual cash value for the loss or damage until actual repair or replacement is complete." [Doc. 17-5, p.25 (emphasis in original)] In other words, Encompass' obligation to pay contents losses is an alternative obligation - *i.e.*, Encompass will pay "actual cash value" unless the insured repairs or replaces the contents, in which case Encompass will pay the replacement or repair cost, rather than actual cash value. La. Civ. Code art. 1808 ("An obligation is alternative when an obligor is bound to render only one of two or more items of performance"). The Louisiana Code provides as follows for those situations in which one of the items of performance becomes impossible:

> When the choice [of the item of performance] belongs to the obligee and one of the items of performance becomes impossible or unlawful without the fault of the obligor, the obligee must choose one of the items that remain. If the impossibility or unlawfulness is due to the fault of the obligor, the obligee may choose either one of those that remain, or damages for the item of performance that became impossible or unlawful.

La. Civ. Code art. 1812.

In this matter, the choice of performance (actual cash value or replacement/repair costs) belonged to the insured obligee. However, one of the items of performance (replacement/repair of the damaged contents) became impossible, without the fault of the obligor, due to the death of the obligee. Therefore, La. Civ. Code art. 1812 provides that the obligee must choose one of the items that remain - in this matter, reimbursement of actual cash value. That is precisely what occurred in this case. Encompass issued a check to Mrs. Shelton's son/attorney for actual cash value of the destroyed items for which a sufficient claim had been submitted. Additionally, for those reasons provided in Section III(A), *supra*, the Court finds this claim has prescribed. Accordingly, the Court

finds plaintiff's claim for depreciation must be dismissed.

### D.    Penalty Claim

By this claim, plaintiff argues the estate is entitled to penalties, attorney fees and costs pursuant to La. R.S. 22:1892 and 22:1973. [Doc. 1-4, p. 3] However, as the loss occurred in 2002 and the claim was adjusted through 2004, the Court applies the penalty statutes in effect at that time, namely La. R.S. 22:658 (West 2002-04) and La. R.S. 22: 1220 (West 2002-04). *See e.g. Durio v. Horace Mann Ins. Co.*, 74 So.3d 1159, 1171-72 (La. 2011)(As a general rule, the versions of the penalty statutes in effect at the time the cause of action arises and the claim was adjusted are the applicable statutes). Defendant argues this claim should be dismissed, as it has prescribed, and the penalty statutes do not penalize the conduct at issue.

La. R.S. 22:658 requires an insurer to pay the amount of any claim due an insured within 30 days after receipt of satisfactory proof of loss; it additionally provides that failure to do so, if arbitrary, capricious and without probable cause, subjects the insurer to a penalty, as well as attorney's fees. La. R.S. 22:658(B); *see also Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So.2d 1012, 1019-20 (La. 2003). La. R.S. 22:1220 provides that an insurer owes its insured "a duty of good faith and fair dealing," and has "an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured. . . ." La. R.S. 22:1220(A). An insurer who breaches the foregoing duties may be held liable for damages and penalties. *Id.* at § (C). "Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause," constitutes a breach of the insurer's duties, "if knowingly committed or performed by an insurer." *Id.* at (B).

The conduct prohibited by La. R.S. 22:1892 and La. R.S. 22:1973 is "virtually identical," with the primary difference being "the time periods allowed for payment."[13] *Reed* at 1020. Both statutes are penal in nature and must be strictly construed. *Id.* "The sanctions of penalties and attorney fees are not assessed unless a plaintiff's proof is clear that the insurer was in fact arbitrary, capricious, or without probable cause in refusing to pay."[14] *Reed* at 1021. "Penalties should be imposed only when the facts 'negate probable cause for nonpayment.'" *Louisiana Bag Co., Inc. v. Audubon Indent. Co.*, 999 So.2d 1104, 1114 (La. 2008)(quoting *Guillory v. Travelers Ins. Co.*, 294 So.2d 215, 217 (La. 1974)); *Levy Gardens Partners 2007, L.P. v. Commonwealth Land Title Ins. Co.*, 706 F.3d 622, 635 (5th Cir.2013).

In support of its penalty claim, plaintiff argues: Encompass should have taken further action when plaintiff's son/agent/attorney failed to negotiate the check for $130,156.94[15]; Encompass chose to "secret, divert and keep Mrs. Shelton's funds for itself," and its "failure to make any effort to pay those funds to the rightful owner – until caught in June of 2012 – is proof of Encompass' arbitrary

---

[13] Upon receipt of satisfactory proof of loss, La. R.S. 22:1892 requires payment within 30 days, whereas La. R.S. 22:1973(B)(5) requires payment within 60 days.

[14] "An 'arbitrary' act is an act "based on random choice or personal whim, rather than any reason or system." *Reed* at 1020, n. 7 (citing The New Oxford American Dictionary 80 (Elizabeth J. Jewell & Frank Abate eds., 2001)). "'Capricious' action is 'given to sudden and unaccountable changes of behavior.'" *Id.* The phrase, "arbitrary, capricious, or without probable cause," as used in La. R.S. 22:1892 and La. R.S. 22: 1973, "is synonymous with 'vexatious.'" *Reed* at 1021 (citing *Louisiana Maintenance Services, Inc. v. Certain Underwriters at Lloyd's of London*, 616 So.2d 1250, 1253 (La.1993)). The Louisiana Supreme Court "has noted that 'vexatious refusal to pay' means unjustified, without reasonable or probable cause or excuse." *Id.* "Both phrases describe an insurer whose willful refusal of a claim is not based on a good-faith defense." *Id.*

[15] More specifically, plaintiff argues Encompass should have attempted to pay Mrs. Shelton's succession representative (who the Court notes was not appointed until March of 2012), one of her other children (the Court notes in October of 2003, Mr. Shelton advised Encompass he was acting on behalf of Mrs. Shelton in his capacity as her attorney), the Louisiana Treasurer under the Unclaimed Property Act, or it should have filed a concursus proceeding. [Doc. 22-1, p. 5]

and capricious bad faith"; and Encompass acted arbitrarily and in bad faith by assigning a zero for those items for which it had insufficient proof of loss, rather than assigning those items some numerical value.

For the reasons set forth in Section III(A), *supra*, the Court finds any claim for penalties and attorney fees has prescribed.

## IV. Conclusion

In light of the foregoing, the Court GRANTS summary judgment in favor of defendant as to all claims; plaintiff's motion for summary judgment is DENIED. The parties are to jointly submit a final judgement, approved as to form, within fourteen days of issuance of this Ruling.

THUS DONE AND SIGNED in Lafayette, Louisiana, this __13__ day of November, 2014.

                                                REBECCA F. DOHERTY
                                                UNITED STATES DISTRICT JUDGE